United States District Court for the Western District of Texas
Austin Division

| | |
|---|---|
| Sam Kirsch, § | |
|     Plaintiff, § | |
| § | Case no. 1:20-cv-01113-RP |
| v. § | |
| § | |
| City of Austin and § | |
| Officer Rolan Roman Rast, § | |
|     Defendants. § | |

**Plaintiff's First Amended Complaint**

To the Honorable Court:

**I.    Introduction**

This is a lawsuit about Officer Rolan Roman Rast who shot Plaintiff Sam Kirsch in the face to punish him for participating in a peaceful protest against police brutality on Interstate 35. Officer Rast shot Sam in the head with a so-called "less lethal" projectile moments after Sam had been peacefully exercising his constitutional right to assemble with like-minded people and protest the government. Shockingly, Officer Rast shot Sam *while* Sam was following police commands to disburse and *after* Sam had stopped protesting and had already left the highway.

This lawsuit is also about the City of Austin's appalling response to protests—especially its pattern of violently violating demonstrators' civil rights—during the weekend of May 30-31, 2020. The City compounded its mishandling of the situation by failing to investigate or attempt to deter further misconduct by Officer Rast and other police. Sam described the events of May 31 in detail at a City Council meeting attended by the police chief and his assistant chiefs on June 4. A month later, on July 2, Austin police denied knowing anything about Sam or his injury.

1

Finally, based on multiple credible sources, the City caused severe injuries by allowing its stockpile of "less-lethal" munitions to expire, and thus harden, and then arming its police with these expired munitions for crowd control during peaceful demonstrations.

**Table of Contents**

I. Introduction ...................................................................................................................1

II. Parties ..........................................................................................................................3

III. Jurisdiction ..................................................................................................................3

IV. Venue ..........................................................................................................................3

V. Facts ............................................................................................................................3

    A. Officer Rast shot Sam Kirsch even though Sam was doing nothing wrong.................3

    B. At best, the City tried to ignore what happened to Sam. ............................................9

    C. Other protesters were also severely injured. ............................................................11

VI. Claims........................................................................................................................13

    A. Officer Rast violated Sam Kirsch's First Amendment rights when he shot Sam in retaliation for protesting police misconduct. ....................................................................13

    B. Officer Rast violated Sam Kirsch's Fourth and Fourteenth Amendment rights when he shot Sam without justification..........................................................................................13

    C. Officer Rast acted with such impunity and reckless disregard for civil rights, this case warrants damages that will deter this type of misconduct in the future. ...........................14

    D. The City of Austin's policy of using excessive violence to control demonstration crowds violated protesters' First, Fourth, and Fourteenth Amendment rights....................14

    E. The City was negligent when it used expired munitions against protesters. .................15

VII. Damages.....................................................................................................................16

VIII. Request for jury trial ...................................................................................................16

IX. Prayer.........................................................................................................................16

## II. Parties

1. Sam Kirsch is a resident of Austin, Texas.

2. The City of Austin is a Texas municipal corporation in the Western District of Texas. Brian Manley is Austin's policymaker when it comes to policing.

3. Officer Rolan Roman Rast is the Austin police officer who shot Sam.

## III. Jurisdiction

4. This Court has federal question subject matter jurisdiction over this 42 U.S.C. § 1983 lawsuit under 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over Officer Rast because he works and lives in Texas. The City of Austin is subject to general personal jurisdiction because it is a Texas municipality.

6. This Court has specific personal jurisdiction over Officer Rast and the City because this case is about their conduct that occurred here in Austin, Texas.

## IV. Venue

7. Under 28 U.S.C. § 1391(b), the Western District of Texas is the correct venue for this lawsuit because the events described above and below occurred in Austin.

## V. Facts

### A. Officer Rast shot Sam Kirsch even though Sam was doing nothing wrong.

8. On May 31, 2020 at 4:00pm, Sam Kirsch was peacefully exercising his constitutional right to assemble and protest the government. This picture from KXAN shows Sam sitting in the northbound lanes of Interstate 35 adjacent to Austin police headquarters with a large crowd of peaceful protesters:



9. At 4:00 pm, Austin police began tear gassing the protesters. Moments later police began ordering demonstrators to clear the highway and simultaneously began shooting so-called "less lethal" projectiles at various protestors. This screenshot of drone video shows

the scene when the tear gas started:



10. In response to the tear gas, Sam, like everyone else, scrambled to get off the highway. He opened an umbrella he had in his backpack and held it on the side of his body that was closest to the police for protection as he ran:



11. As Sam ran up the steep grassy median between the northbound lanes of the Interstate and the northbound frontage road, he turned and looked back over his shoulder. In doing so, he lowered his umbrella, and, in that moment, Officer Rast shot him in the head. Sam fell forward and downhill onto the ground when he was shot:



12. Multiple protesters who had been running up the hill to escape the shooting, turned back to help Sam who was bleeding profusely and was blinded. The group of Good Samaritans worked together to get Sam up the hill and further away from police:



13. One of the Good Samaritans pulled her car adjacent to where the group was tending to Sam and the group loaded Sam into the back seat. Two women drove Sam to the emergency room at Dell Seton Medical Center.

14. Sam was admitted to the hospital and underwent the first of his three surgeries to date (there will likely be more surgeries to try to preserve Sam's remaining eyesight). These pictures of Sam's skull taken on May 31, 2020 show the hole that Officer Rast shot into Sam's orbital cavity and cheekbone:




15. Sam's surgeon made this mold of Sam's face to practice fitting the metal implants before Sam underwent Open Reduction Internal Fixation (ORIF) surgery on June 9 (the second of Sam's three surgeries to date):



This is an image of Sam's face with the metal implants after the ORIF surgery on June 9:



16. The metal implants in Sam's face are permanent. The structure of Sam's face and his eyesight will never fully heal. Officer Rast's excessive and unjustified use of force permanently disabled Sam.

17. On May 31, *Texas Tribune* journalists collected spent munitions fired by Austin police at demonstrators, including Sam, that day:



https://www.texastribune.org/2020/06/03/texas-police-force-protests-george-floyd/.

18. Austin police Chief Brian Manley later identified the types of munitions that he ordered his officers to carry and use on May 31. Under questioning from the Austin City Council—and referring to the picture of expended projectiles collected by *Texas Tribune* journalists (above)—he stated:

> And then since you've got these pictures up here, what I see is the 12-gauge munition is the one on the direct left. That is a foam baton round, and so that -- rubber bullets are -- and I guess maybe it's a misnomer -- rubber bullets are also from a 12-gauge shotgun something you do as a skip round into the answering or something. That is a foam baton round that we also have access and use of. That's what that larger one is that's being held there. And then of course the one in the middle is a gas can, and I don't know whether that is smoke or whether that was the cs can.

https://www.austintexas.gov/edims/document.cfm?id=341786 (Transcript Austin City Council, June 4, 2020).

19. Upon information and belief, Officer Rast shot Sam with a 40mm "foam baton" round or a 12-gage round filled with lead pellets.

20. Upon information and belief, the City armed its police on May 30 and May 31 with expired munitions which had hardened over time and thus caused more severe injuries than munitions used within the manufacturers' recommended time frames.

**B. At best, the City tried to ignore what happened to Sam.**

21. At the same City Council meeting where Brian Manley gave the testimony above, Sam testified in detail about what happened to him:

> \>> The next speaker is Samuel kirsch. You have three minutes.
> \>> Sam: Hello. This is Sam. Can you all hear me?
> \>> Yes.
> \>> Sam: Hello?
> \>> Mayor Adler: Yes. Please proceed.
> \>> Sam: Okay, thank you. First of all, I want to thank mayor Adler and the city council for allowing me to speak today. So I was peacefully protesting on Sunday, may 31st, in solidarity with black lives matter. When I was near I-35, police started

9

using what I believe was smoke grenades, which is when I started running away. While I was on the grass, while I was running away, I was shot with what I believe to be either a rubber bullet or a beanbag. I was hit in my face. If I were not wearing sunglasses at the time, I have no doubt in my mind that I would be blind right now. I immediately hit the ground and was dragged away by fellow protesters and I was rushed to the hospital. There was blood all over my chest, and my hands. It felt like a war zone. I did not know what was going on, and it all happened extremely quickly. The damage that I took was a very large laceration due to the cut from the sunglasses, from the bullet hitting them. I suffered a broken nose. I believe it was also five or six broken bones near my upper cheek and the bone supporting my eye. I also have hopefully temporary retinal bruising. I have to undergo another surgery in a week. That surgery is risky, because I will be getting multiple titanium plates to support my eye. There's a risk for the -- for my body to reject those plates. There's a risk for infection with those plates. There's also a risk of going blind from the surgery, because when they do the surgery, they have to make an incision in my lower left eyelid. And there's also a significant risk, I was told by an ophthalmologist, of permanent vision loss, either temporary or -- either partial or permanent, even if the surgery goes well. I'm currently unable to eat anything except pureeed food, I have to drink through a straw. I have double vision, I have no depth perception, I am in enormous pain, both physically, emotionally and soon to be financially. And I would like to thank some of those councilmembers that have called out the police chief for not showing his face, and for not having sufficient answers to using these, quote unquote, less lethal rounds on people, protesters. I think it was wrong in any scenario. So I'm open to any questions if you have them. And thank you for allowing me to speak today.

https://www.austintexas.gov/edims/document.cfm?id=341786 (Transcript Austin City Council, June 4, 2020).

22. Brian Manley and his assistant chiefs attended the June 4 City council meeting and heard straight from Sam about what had happened. Nonetheless, Austin police denied having even heard of Sam Kirsch or his injury one month later, on July 2.

23. It was over another month before police investigators even spoke to Sam. At Sam's police interview on August 13, the lead investigator (despite having the drone footage and Sam's hospital records) stated that he did not yet have probable cause to investigate any police officer for injuring Sam. The lead investigator expressed his

10

skepticism that Sam's injuries were caused by an Austin police officer and he attempted to have Sam implicate other protesters in his injury instead.

### C. Other protesters were also severely injured.

24. A group of emergency room doctors who had treated Austinites injured by police on May 30 and May 31 at Dell Seton Medical Center, published an op-ed in *The New England Journal of Medicine* about their observations. The doctors unequivocally concluded that these munitions should not be used for crowd control, stating:

> In Austin, Texas, tensions culminated in 2 days of vigorous protest, during which police used beanbag munitions for crowd control, resulting in numerous clinically significant injuries.
> . . .
> At the closest level 1 trauma center, located blocks from the protests in Austin, we treated 19 patients who sustained beanbag injuries over these 2 days.
> . . .
> Four patients had intracranial hemorrhages. One patient presented with a depressed parietal skull fracture with associated subdural and subarachnoid hemorrhages, leading to emergency intubation, decompressive craniectomy, and a prolonged stay in the intensive care unit. Another patient presented with a depressed frontal bone fracture with retained beanbag, which was treated with an emergency craniotomy and cranioplasty.
> . . .
> Although our report reflects the experience at only one center during a short period and we cannot determine the frequency of injuries when these munitions are used, these findings highlight the fact that beanbag munitions can cause serious harm and are not appropriate for use in crowd control. Beanbag rounds have since been abandoned by our local law enforcement in this context.

https://www.nejm.org/doi/full/10.1056/NEJMc2025923. The doctors listed Sam's injuries among the most serious head injuries:

**Table 1. Patients with Beanbag Injuries during the 2020 Protests in Austin, Texas.***

| Type of Injury, Sex, and Age | Details of Injury | Course |
| --- | --- | --- |
| **Head injury** | | |
| F, 26 yr | 5-mm Subdural hematoma, hemotympanum | Admitted to ICU, treated without operative intervention, discharged on hospital day 3 |
| M, 20 yr | Displaced right parietal skull fracture, subarachnoid hemorrhage, 5-mm subdural hematoma | Intubated, taken to OR for craniectomy and cranioplasty, admitted to ICU, given a tracheostomy, discharged on hospital day 23 to rehabilitation facility |
| M, 18 yr | 6-cm Scalp laceration, subarachnoid hemorrhage | Treated with washout and laceration repair, admitted to medical–surgical floor, discharged on hospital day 1 |
| M, 16 yr | Midline comminuted, depressed frontal bone fracture; retained beanbag; bifrontal intraparenchymal hemorrhage; subarachnoid hemorrhage; subdural hematoma | Taken to OR for foreign-body removal, bifrontal craniotomy, cranioplasty, and complex wound closure; admitted to ICU; given a psychiatric consultation; discharged on hospital day 6 |
| M, 25 yr | Inner canthus laceration; comminuted, displaced fractures of the maxilla and orbital floor | Taken to OR for washout and laceration repair, discharged on hospital day 2, given delayed ORIF for facial fractures |
| **Facial fracture** | | |
| F, 29 yr | Open facial wound with retained beanbag in masticator space; comminuted, displaced mandibular and maxillary fractures; facial nerve palsy | Taken to OR for foreign-body removal, washout, and débridement; discharged on hospital day 1; treated with healing by secondary intention (i.e., the wound was left open to heal under a dressing) |
| M, 23 yr | Comminuted, displaced mandibular body fracture; avulsed teeth; complex lip and gingival lacerations | Taken to OR for closed reduction, washout, débridement, and laceration repair; discharged on hospital day 1 |
| **Other injuries** | | |
| F, 29 yr | Penetrating soft-tissue injury to chest and breast, retained beanbag | Taken to OR for foreign-body removal, washout, and débridement; discharged on hospital day 1; treated with healing by secondary intention |
| F, 19 yr | Open fracture of the olecranon with retained foreign bodies | Taken to OR for ORIF, débridement, and foreign-body removal; discharged on hospital day 2 |
| M, 54 yr | Lacerations to torso and shin | Received washout and laceration repair, discharged |
| F, 19 yr | Laceration to eyebrow | Received washout and laceration repair, discharged |
| F, 43 yr | Tuft fracture | Received splinting, discharged |
| M, 36 yr | Abdominal abrasion, contusion | Discharged |
| M, 31 yr | Elbow laceration | Received washout and laceration repair, discharged |
| M, 22 yr | Olecranon fracture | Received sling, discharged |
| M, 16 yr | Contusion to forearm and leg | Discharged |
| F, 24 yr | Contusion to abdomen | Discharged |
| M, 20 yr | Contusion to abdomen, ear laceration | Received washout and laceration repair, discharged |
| F, 19 yr | Scalp laceration | Received washout and laceration repair, discharged |

VI. **Claims**

　A. **Officer Rast violated Sam Kirsch's First Amendment rights when he shot Sam in retaliation for protesting police misconduct.**

　　25.　Sam Kirsch incorporates sections I through V above into his First Amendment claim.

　　26.　Sam brings this claim under 42 U.S.C. § 1983.

　　27.　Sam exercised his right to free speech and his right to assemble with other demonstrators to protest police brutality on May 31, 2020.

　　28.　Officer Rast shot Sam because Sam was protesting Austin police and other police departments around the country for their habitual use of excessive force. Officer Rast was acting under color of law when he shot Sam as retribution for Sam exercising his First Amendment rights. Officer Rast was acting under color of law when he directly and proximately caused Sam's injuries.

　B. **Officer Rast violated Sam Kirsch's Fourth and Fourteenth Amendment rights when he shot Sam without justification.**

　　29.　Sam Kirsch incorporates sections I through VI.A above into his Fourth and Fourteenth Amendment claims.

　　30.　Sam brings this claim under 42 U.S.C. § 1983.

　　31.　Officer Rast was acting under color of law when he shot Sam as he scrambled to disburse. Officer Rast shot Sam even though Sam did not pose a danger to anyone and *after* Sam had complied with police commands and left the highway.

**C. Officer Rast acted with such impunity and reckless disregard for civil rights, this case warrants damages that will deter this type of misconduct in the future.**

32. Sam Kirsch incorporates sections I through VI.B above into his punitive damages claim.

33. Officer Rast's actions and conduct were egregious, reckless, and endangered numerous peaceful protesters and bystanders. Sam seeks punitive damages to deter this type of retaliation and excessive force against protesters who demonstrate against police brutality in the future.

**D. The City of Austin's policy of using excessive violence to control demonstration crowds violated protesters' First, Fourth, and Fourteenth Amendment rights.**

34. Sam Kirsch incorporates sections I through VI.C above into his *Monell* claim.

35. Sam brings this claim under 42 U.S.C. § 1983.

36. Austin had these policies, practices, and customs on May 30-31, 2020:

   a. Using dangerous kinetic projectiles that caused severe and permanent injuries to control peaceful demonstrations,

   b. Using excessive force against non-violent demonstrators,

   c. Failing to adequately train officers regarding civil rights protected by the United States Constitution,

   d. Failing to adequately train officers in crowd control during non-violent protests,

   e. Failing to adequately supervise officers doing crowd control during non-violent protests,

   f. Failing to intervene to stop excessive force and civil rights violations by its officers during non-violent protests,

   g. Failing to investigate excessive violence by its officers against peaceful protesters, and

   h. Failing to adequately discipline officers for—and deter officers from—using excessive force and violating protesters' civil rights during demonstrations.

37. The City and Brian Manley knew about these policies and directed Austin police to comply with them. The City and Brian Manley developed and issued these policing policies with deliberate indifference to Sam's and other peaceful demonstrators' civil rights.

38. The City and Brian Manley were aware of the obvious consequences of these policies. Implementation of these policies made it predictable that Sam's constitutional rights would be violated in the manner they were, and the City and Brian Manley knew that was likely to occur. It was obvious that these policies would injure more people on May 31 because they injured so many people on May 30. The City and Brian Manley condoned and ratified the civil rights violations and the conduct that caused injuries on May 30 by continuing to mandate the same policies on May 31.

39. These polices were the moving force behind Officer Rast's violation of Sam's civil rights and thus, proximately caused Sam's severe injury and permanent disability.

**E. The City was negligent when it used expired munitions against protesters.**

40. Sam Kirsch incorporates sections I through VI.D above into his negligence claim.

41. The City had a duty to every Austinite, including Sam, to maintain and keep its stockpiles of police equipment functional and up to date. The City had a duty to Sam and every other protester not to arm its police with expired munitions that become more dangerous with age when its police were sent to control crowds during demonstrations. Nonetheless, upon information and belief, the City knowingly armed its police with expired munitions on May 30 and May 31, 2020 and thus breached its duty to Austinites including Sam.

42. Upon information and belief, Sam's injuries were more serious because the projectile was expired and had hardened. Upon information and belief, the City's failure to

15

maintain unexpired munitions stores and the deliberate decision to use expired munitions against Sam and other protesters directly and proximately caused Sam's injuries.

## VII. Damages

43. Sam Kirsch incorporates sections I through VI above into this section on damages.

44. Sam seeks recovery for all of his damages including past and future pain, past and future mental anguish, past and future disfigurement, past and future physical impairment, past and future loss of enjoyment of life, past and future medical expenses, past and future lost income, past and future loss of consortium, past and future loss of services, miscellaneous other economic damages including out-of-pocket expenses, pre and post judgment interest, attorney's fees, expenses, and costs.

## VIII. Request for jury trial

45. Plaintiff requests a jury trial.

## IX. Prayer

46. For all these reasons, Sam Kirsch requests that the City of Austin and Officer Rast be summoned to appear and answer Sam's allegations. After a jury trial regarding his claims, Sam seeks to recover the damages listed above in an amount to be determined by the jury and any other relief to which he is entitled.

Respectfully submitted,
Hendler Flores Law, PLLC

*/s/ R Webber/*

_____
Rebecca Webber

rwebber@hendlerlaw.com
Scott M. Hendler
shendler@hendlerlaw.com

**HENDLER FLORES LAW, PLLC**
1301 West 25th Street, Suite 400
Austin, Texas 78705
Telephone: 512-439-3202
Facsimile: 512-439-3201

Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

    I certify that Plaintiff's First Amended Complaint was filed on January 21, 2021 via the Court's CM/ECF which will serve all counsel of record.

_____
Rebecca Ruth Webber